UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN HOLT, M.D.,

        Plaintiff,

v.

THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY,

        Defendant.
_____/

Case No. 1:04-CV-280

Hon. Richard Alan Enslen

**OPINION**

    This matter is before the Court on Defendant The Northwestern Mutual Life Insurance Company's Motion for Summary Judgment and Plaintiff Steven Holt, M.D.'s Motion for Partial Summary Judgment. The Court has reviewed the pleadings and the record and oral argument is unnecessary.

**I.    BACKGROUND**

    The primary dispute in this case is whether Plaintiff qualifies for benefits under his insurance contract with Defendant insurer. Plaintiff is a medical doctor and specialized as an emergency physician. As Plaintiff perfected his medical skills and developed more emergency room experience he was asked take on additional administrative roles. Eventually, Plaintiff became the Medical Director and Chairman of Emergency Services at Spectrum Health in Grand Rapids, Michigan. Plaintiff also has a significant ownership interest in Precision Angling Specialists, L.L.C. and works for that company a few days out of the year in limited capacities.[1] At some point before April 30,

---

[2] According to Plaintiff, Precision Angling Speicalists, L.L.C., publishes outdoor sportsman's books.

2001, Plaintiff began to suffer from depression and had increasing difficulty managing the stresses that accompany emergency medicine.[2] On April 30, 2001, Plaintiff resigned as an emergency room physician because he no longer believed he could function in this environment.

On May 1, 2001, Plaintiff began to work for Medical Hair Restoration, Inc., as a hair replacement surgeon. On May 15, 2001, Plaintiff forwarded a claim of total disability to Defendant who denied coverage and claimed Plaintiff was not disabled within the meaning of his policy.

Plaintiff sued Defendant in Michigan state court and Defendant removed to this Court on diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff has amended his Complaint three times; however, the charged counts remained the same. He is seeking damages for breach of contract, a declaratory judgment against Defendant, and an award of punitive interest. On August 18, 2004, Defendant moved to dismiss Plaintiff's Complaint for failing to state a claim upon which relief can be granted and partial summary judgment. This Court denied Defendant's motions in a December 12, 2004 Opinion. The instant motions followed.

## II.     STANDARD OF REVIEW

When sitting in diversity jurisdiction and construing an insurance contract, a federal court applies the substantive law of the forum state. *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)) (other citations omitted). If the Michigan Supreme Court has not spoken on a particular issue, the Court must determine state law based on decisions of the Michigan Court of Appeals, federal courts interpreting

---

[1] Plaintiff originally framed his disability claim as "burn-out." He was later diagnosed by Dr. Charles Grayson, Ph.D., as suffering from an anxiety disorder and dysthymia. According to Dr. Grayson, dysthymia is a depressive condition that is based on symptoms of a depressed mood, chronic fatigue, feelings of hopelessness, disturbed sleep, overeating, and disturbed self esteem. For convenience, Plaintiff's condition will hereinafter be generically referred to as depression.

Michigan law, and scholarly commentary. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (1995) (other citations omitted). As for procedural matters, the Court is guided by the Federal Rules of Civil Procedure. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. Since both parties moved for summary judgment and partial summary judgment, each will be accorded the status of movant and non-movant when applicable.

**III.   ANALYSIS**

The parties' motions and the various grounds asserted therein warrant a preliminary explanation. In Defendant's current Motion for Summary Judgment, it avers that there is no genuine issue of material fact in that: Plaintiff is not disabled because he can perform his principal occupational duties; if he is disabled, such disability is only partial; he has not satisfied the "under licensed physician care" clause of his policy; and his claimed disability does not result from sickness.

Plaintiff's Motion for Partial Summary Judgment is sought on the following grounds: that his disability arose from a sickness; that he became disabled when the policy was in force; that the "under licensed physician care" clause cannot bar coverage; that his activity with Precision Angling Specialists is not his occupation; that his present position as a hair restoration surgeon is not his occupation at the time of his disability; and that Plaintiff provided Defendant with the required written proof of disability

The Court will first address the asserted grounds in Defendant's Motion, next address the grounds for summary judgment mentioned by both parties when they overlap, and lastly address the grounds asserted for summary judgment by Plaintiff only.

The parties' motions require this Court to interpret and construe their insurance contract. When examining the language of an insurance policy and interpreting its terms, it is well settled that an insurance policy must be enforced according to its terms. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 207 (1991). Policy terms are ascribed their ordinary meaning and common usage unless defined otherwise within the contract. *Nabozny v. Burkhardt*, 461 Mich. 471, 477 (2000). The Court is mindful that when a policy is unambiguous, it must be enforced consonant with its terms and courts cannot require an insurer to indemnify a risk it did not assume. *Nabozny*, 461 Mich.

at 477 n.8 (citing *Upjohn Co.*, 438 Mich. at 207). Further, the Court will not stretch to create a policy ambiguity when its language is clear. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567 (1992). However, when an ambiguity does arise, the Court will construe the policy in favor of the insured. *Nabozny*, 461 Mich. at 477; *Auto Club Ins. Ass'n v. DeLaGarza*, 433 Mich. 208, 214 (1989); *Powers v. DAIIE*, 427 Mich. 602, 624 (1986). It is with these principles in mind the Court turns to its charged task.

Defendant issued four separate disability insurance policies to Plaintiff.[3] The LL policy's coverage section reads as follows:

> **Disabilities Covered By The Policy.** Benefits are provided for the Insured's total or partial disability only if:
>
> • the Insured becomes disabled while this policy is in force;
> • the Insured is under the care of a licensed physician other than himself; and
> • the disability results from an accident that occurs, or from a sickness that first appears, while this policy is in force. A sickness is considered to appear if it would have caused a prudent person to seek medical attention.

The MM policies' coverage sections are identical to each other and provide:

> **Disabilities Covered By The Policy.** Benefits are provided for the Insured's total or partial disability only if:
>
> • the Insured becomes disabled while this policy is in force;
> • the Insured is under the care of a licensed physician other than himself during the time he is disabled;
> • the disability results from an accident or sickness; and
> • the disability is not excluded under section II.[4]

---

[3] The first policy was designated as "LL" by Defendant. The remaining policies were denoted as "MM." The Court will refer to the policies collectively unless noted otherwise.

[4] Defendant has not argued any section II exclusions.

Defendant has advanced four reasons why Plaintiff is not covered under the terms of the policy, the first being that he has not suffered a total disability.

### A. Total Disability

As noted, Plaintiff's principal duties were divided between administration and the emergency room. Defendant contends that Plaintiff was not disabled and can still perform in an administrative capacity. The policies define total disability as the "insured's inability to perform all the principal duties of his occupation." Whether or not Plaintiff was totally disabled with regard to his principal duties remains in dispute as Plaintiff has submitted some evidence that he could not function in an emergency medicine environment, be it as an administrator or with scalpel in hand. Therefore, Plaintiff has met his burden under Federal Rule of Civil Procedure 56(e), and consequently, Defendant is not entitled to summary judgment on this basis.

Defendant also contends that Plaintiff's ownership interest in Precision Angling Specialist and his current position as a hair replacement surgeon preclude a finding of total disability. Defendant maintains this is so because the policy provides that if the insured is regularly engaged in more than one occupation and can still perform at least one of those occupations, he is only partially disabled. The ordinary meaning of occupation belies this contention.

Occupation means "ones's regular source of livelihood." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1251 (3d ed. 1996). For nearly 20 years, Plaintiff has earned a livelihood as a physician, and his involvement with Precision Angling Specialists merely supplemented that livelihood with a primarily passive investment. Plaintiff lent his services to Precision Angling Specialist only a few days out of the year and left the day-to-day management to others. This cannot be said to be his regular source of livelihood.

Furthermore, Plaintiff's current occupation as a hair replacement surgeon is not relevant. The policy contemplates the insured's occupation at the time he becomes disabled, not what his occupation may be after disability. Plaintiff's occupation for purposes of the policy was emergency medicine and Defendant is not entitled to summary judgment on the basis of Plaintiff's other supposed policy occupations.

Lastly, Defendant has offered the diagnoses of its physicians that Plaintiff was not disabled. Plaintiff has submitted the diagnosis of Dr. Grayson, which a reasonable juror could read to mean Plaintiff was disabled. Therefore, as with Defendant's preceding bases for summary judgment, Plaintiff has responded with sufficient evidence to the contrary. Since Plaintiff has met his evidentiary burden under Rule 56(e), Defendant is not entitled to summary judgment on the ground that Defendant was not totally disabled.

### B.     Partial Disability

Next, Defendant maintains that even if Plaintiff is disabled, he is only partial disabled. The policies define partial disability as the "insured's inability to perform one or more of the principal duties of his occupation or when he is unable to spend as much time at his occupation as he did before." Because the Court cannot conclude with any certainty that Plaintiff is totally disabled, it has the same doubt as to whether he is partially disabled. Logically, the latter should be determined before the former, and Defendant is not entitled to summary judgment on this ground.

      **C.**      **"Under Licensed Physician Care" Clause**[5]

As observed, the policies require the insured be under the care of a licensed physician other than himself for coverage to attach.[6] Defendant asserts that the clause means that Plaintiff must be continually under the care of a licensed physician. Plaintiff argues that the clause is ambiguous and must be decided in his favor.

Review of an insurance policy for ambiguity is a question of law. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 460 Mich. 558, 563 (1999). An insurance policy's provisions are ambiguous if they are reasonably susceptible to two different meanings. *Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 412 Mich. 355, 362 (1982). In *Raska*, the Michigan Supreme Court explained an insurance policy ambiguity as:

> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.

*Id.* Plaintiff contends that the LL policy is ambiguous as to when he must seek care and the MM policies are ambiguous as to how long he must remain under care.

After a fair reading of both clauses, the Court finds both ambiguous as to when, and how long, Plaintiff must seek and remain under the care of a licensed physician. Under the LL policy, it is reasonable to interpret the clause as meaning Plaintiff must submit to a licensed physician's care at some point, and it is also reasonable to find that the clause requires Plaintiff to remain

---

[5] The parties' motions overlapped on this ground and will be considered as competing motions for summary judgment.

[6] Temporally, the LL policy's clause has no timing requirement. The MM policies require Plaintiff be under the care of a licensed physician other than himself during the time he is disabled.

continuously under a licensed physician's care throughout his disability. The MM clauses are vulnerable to the same ambiguity, as it is reasonable to interpret them as requiring physician care at some point or continuous physician care. Thus, the policies are susceptible to alternate meanings and must be construed in favor of coverage. *Raska*, 412 Mich. at 362. Had Defendant intended for coverage to follow only when Plaintiff was under continuous care, it could have specified so. Thus, because the under care clauses are ambiguous and must be construed in favor of Plaintiff, and because Plaintiff has been under the care of a licensed physician other than himself during the time he was disabled, Plaintiff is entitled to summary judgment.

        **D.**        **Disability Resulting from Sickness Clause**[7]

The policies also require that the claimed disability result from a sickness. Defendant maintains that because Plaintiff originally styled his condition as "burn out," it is not a recognized sickness. However, as noted, Plaintiff's psychologist Dr. Grayson diagnosed Plaintiff as suffering from a form of depression. *See supra* note 1. Defendant has not offered any evidence that depression is not a sickness, but merely challenged Plaintiff's motivations for seeking disability benefits and suggested he is just using his disability claim as an income bridge while making a career change. Conjecture and speculation will not suffice for evidence, and thus, Defendant has not met its burden under Rule 56. Plaintiff is entitled to summary judgment on the ground that his condition resulted from a sickness within the meaning of the contract.

---

[7] The parties' motions overlapped on this ground and will be considered as competing motions for summary judgment.

### E.    That Plaintiff Became Disabled When the Policy Was in Force

Plaintiff contends that he was disabled when the policy was in force. Defendant's response is that Plaintiff is not disabled, essentially rehashing in a different context its earlier argument that Plaintiff is not disabled. Because the Court cannot conclusively say that Plaintiff is disabled, it also cannot say that Plaintiff was disabled when the policy was in force. The clause is written such that the phrase "while this policy was in force" modifies durationally when Plaintiff must be disabled. Therefore, the clause must be considered in its entirety when determining if Plaintiff has satisfied its terms. Because a genuine issue of material facts exists as to whether Plaintiff is disabled, he is not entitled to summary judgment on the ground that he was disabled when the policy was in force.

### F.    Plaintiff's Association with Precision Angling Specialists

The Court has already determined that Plaintiff's involvement with Precision Angling Specialist does not constitute an occupation within the meaning of the policy, *see supra* section A, and therefore, Plaintiff is entitled to summary judgment on this basis.

### G.    Plaintiff's New Occupation as a Hair Replacement Surgeon

The Court has also already determined that Plaintiff's policy occupation was emergency medicine and his new position as a hair replacement surgeon does not constitute a policy occupation. *See supra* section A. Therefore, Plaintiff is entitled to summary judgment on this basis as well.

### H.    Proof of Disability

Plaintiff claims that he has submitted written proof that he was disabled as required by the policies. The Court construes his Motion as merely asking the Court to certify that he has procedurally complied with the policies' requirements. Simply stated, that Plaintiff sent in written proof of a disability to Defendant. Defendant contends that Plaintiff cannot submit proof of

disability because he cannot prove he was disabled. Defendant has again chosen a formalism rather than a substantive response to Plaintiff's Motion. Defendant has never seriously contended that Plaintiff did not submit written documentation. The record is clear that Plaintiff submitted everything he needed for Defendant to process his claim, including Dr. Grayson's diagnosis evidencing a disability. Defendant merely quarrels with the diagnosis contained in the proof, but it is proof nonetheless. Therefore, because Defendant has not responded with evidence to the contrary, Plaintiff is entitled to summary judgment on this basis.

The Court's holding should not read to mean Plaintiff has proven he was disabled. The Court merely certifies that Plaintiff has procedurally complied with the policies' written proof requirements, effectively narrowing the issue for trial to whether or not Plaintiff was disabled. Indeed, the purpose of motions for partial summary judgment is to "speed[] up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Fed. R. Civ. P. 56 Advisory Committee Notes to the 1946 Amendments. The Court has looked beyond the pleadings to evidence and found the only genuine issue for trial is the question of whether or not Plaintiff is disabled.

## IV.   CONCLUSION

The Court will deny Defendant Northwestern Mutual Life Insurance Company's Motion for Summary Judgment. The Court will further deny in part and grant in part Plaintiff Steven Holt M.D.'s Motion for Partial Summary Judgment. A Partial Judgment consistent with this Opinion shall issue.

DATED in Kalamazoo, MI:  
    September 29, 2005

   /s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE